# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES R. SATTERFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-14-218-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant James R. Satterfield requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on January 30, 1967, and was forty-five years old at the time of the administrative hearing (Tr. 27). He has a twelfth grade education and past relevant work as an appliance assembler and appliance repairman (Tr. 16, 181). The claimant alleges inability to work since December 10, 2010 because of back pain; scoliosis; lumbar disorder causing pain in his legs, knees, and ankle; a calcium deficiency; teeth breaking off; joint disease; and degenerative disc disease (Tr. 180).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 13, 2011. His applications were denied. Following an administrative hearing, ALJ Bernard Porter found that the claimant was not disabled in a written opinion dated March 15, 2013 (Tr. 9-18). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found

that the claimant had the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), including sitting, standing, and walking each up to six hours in an eight-hour workday, except that he required the option to alternate between sitting and standing every thirty minutes, and could never climb ladders or scaffolds, crawl, or be exposed to temperature extremes. Additionally, he found that the claimant would be limited to routine, repetitive tasks; that his off-task time could be accommodated by normal breaks; and that he could engage in occasional interaction with the public, co-workers, and supervisors (Tr. 13). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, surveillance system monitor (Tr. 17).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate his pain and credibility, (ii) by failing to properly evaluate his RFC, and (iii) by failing to fully develop the record. With regard to the first contention, the claimant argues that the ALJ failed to properly account for his mental impairments, including the assessment conducted by consultative examiner Theresa Horton, Ph.D. The undersigned Magistrate Judge agrees that the ALJ did not properly assess the claimant's mental impairments at step four, and the decision of the Commissioner should be reversed.

The ALJ found the claimant's severe impairments were scoliosis, degenerative disease of the cervical and lumbar spine, anxiety with panic disorder, and major depressive disorder (Tr. 11). The medical evidence relevant to this appeal reveals that the

claimant largely received treatment at the Wellness Clinic of Roland. Though not detailed, these regular treatment notes all reflect the claimant consistently struggled with anxiety and depression, as well as insomnia (Tr. 257-273, 279, 284-285, 300, 302, 308-326, 374-411). The claimant also visited Tom A. Wood Chiropractic, Inc., from October 2009 through June 2011. Though somewhat difficult to decipher, these notes also reflect the claimant's reports of pain and depression (Tr. 242-246).

On January 31, 2012, consultative examiner Theresa Horton, Ph.D., conducted a diagnostic interview and mental status examination. Upon examination, she noted that the claimant was casually dressed and appropriately groomed, and that he was cooperative but that his movements appeared slowed, remarking that "[h]is presentation is somewhat odd, his pace is slow, and it is often difficult to keep him on track" (Tr. 352). She reiterated that his thought processes were logical, organized, and goal directed, but that he often became tangential and had to be prompted to stay on task, and that it took him several moments to get to his point (Tr. 352). She further noted that his concentration was poor, although he had average intelligence and good effort (Tr. 352). He had appropriate judgment, but poor insight (Tr. 353). She assessed him with generalized anxiety disorder, panic disorder, dysthymia early onset, and major depressive disorder, recurrent, moderate to severe (Tr. 353). Her prognosis was that the claimant appeared capable of understanding and remembering simple and complex instructions and tasks, but that his pace was so slow he would likely have management problems, particularly with more complex tasks, and also that his concentration was so poor it

would interfere with his productivity. In conclusion, she stated, "He does not appear capable of adequate social and emotional adjustment into most occupational and social settings at this time" (Tr. 353).

On February 14, 2012, state reviewing physician Carolyn Goodrich, Ph.D., found the claimant had mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, with no episodes of decompensation (Tr. 364). She summarized Dr. Horton's report, then opined that although he may have some mental limitations, he appeared capable of simple work (Tr. 366). She also completed a Mental RFC assessment, finding that he was markedly limited in the usual three areas: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 369).

In his written opinion, the ALJ summarized the claimant's testimony and medical records, including the evidence related to the claimant's physical impairments, as well as some of Dr. Horton's assessment. He noted the claimant's history of medication, but that there were no records of ongoing counseling (Tr. 15). As to Dr. Horton's opinion, he acknowledged that "the claimant exhibited some adverse effects of his impairments"; however, he stated that the claimant did not appear to be disabled because he had average intelligence, normal speech, was friendly and cooperative, and his thought processes and memory were intact (Tr. 15). The ALJ then acknowledged some of Dr. Horton's statements regarding her prognosis, giving her opinion moderate weight and accepting

her opinion as to the claimant's poor concentration as consistent with testing and the claimant's own reports, but finding that the claimant's social functioning limitations were not as restrictive as she found, given the record as a whole (Tr. 16). He then gave "significant weight" to Dr. Goodrich's nonexamining opinion because she is a specialist, understands the Social Security requirements, reviewed all the record, and made reasonable and consistent findings (Tr. 16).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ faithfully summarized Dr. Horton's prognosis regarding the

claimant's mental impairments, but only adopted those findings that allowed him to nevertheless determine the claimant was not disabled. More specifically, the ALJ found "the record as a whole" did not support her opinions regarding the claimant's social functioning, but she was the only licensed psychologist in the record to examine the claimant. While neglecting to apply the above-mentioned factors to Dr. Horton's opinion, he then applied them to Dr. Goodrich's opinion without explanation for the difference. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"). Furthermore, while paying lip service to adopting the claimant's concentration limitations, he did not incorporate Dr. Horton's findings into the claimant's RFC nor explain why he did not. This was a significant omission here because the limitations regarding concentration, persistence, and pace directly affect a claimant's ability to perform work. *See Hamlin*, 365 F.3d at 1215 ("An ALJ must evaluate every medical opinion in the record[.]"). *See also Martinez v. Astrue*, 422 Fed. Appx. 719, 725 (10th Cir. 2011) ("To be sure, the ALJ may have had his reasons for giving portions of Dr. LaGrand's opinion 'great weight,' but then disregarding other,

probative portions of her opinion. However, before doing so, the ALJ was required to discuss why he ignored this evidence.") [internal citations omitted].

Because the ALJ engaged in improper picking and choosing to discredit evidence that was inconsistent with his RFC determination, the Court cannot find that he performed the proper analysis. *See, e. g., Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (noting that when determining a claimant's RFC, the ALJ "must 'consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less' and a failure to do so 'is reversible error.'") [unpublished opinion], *quoting Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Accordingly, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand

the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**